Hear ye, hear ye, hear ye. The United States Court of Appeals for the Fifth Circuit is now open. According to law, God save the United States in this honorable court. Our case to begin with today is 2000 250422 Camacho Um, versus Ford. Mr Levenger, you may proceed. Thank you, Your Honor. May it please the court. I'm Jeff Levenger for the Macho family. Uh, this appeal presents two questions about the statute of proposed under Section 16 012 of the Civil Practice and Remedies Code. Most of all, does it even apply here to bar the plaintiff's product liability claims? And secondly, if so, we don't think it does. But if it does, does it toll for the minor's claims? Now, under Section 16 012, a claim has to be the the seller has to be the defendant. And here that's Ford Motor Company on the purchaser would have to be the dealer, which here, which here is Leaf Johnson Ford, because under Texas law, a car manufacturer can't sell cars directly to consumers. The first question, then, is whether Ford actually sold this particular vehicle to leave Johnson. And if so, when it made that sale, the problem Ford has is that it simply did not meet its summary judgment burden approving indisputably and as a matter of law that it even made a sale to leave Johnson Ford of this vehicle, much less that made the sale on October 6 2003 is the district court held there just a multitude of fact issues here about this particular transaction. Um, I think the first question is what constitutes a sale? Uh, the starting point is this court's vision in Dalfrey versus boss there. The court held that Section 16 012 is triggered by the date of the first sale, and the court said the sale is based on the party's agreement to exchange a product for a price to be paid. In that case, the sale occurred when the manufacturer shipped the motorcycle kit to the dealer, and the dealer paid the manufacturer in full. That proof is competent evidence, either documentary or testimonial, establishing whether how or or or when the dealer paid Ford Motor Company for this vehicle. In fact, Ford Motor issued a subpoena to Ford Motor Credit to simply find evidence of this particular transaction, and nothing turned up. So Ford shifted to a different theory, which you're now seeing on appeal that it released the 2003 release being the critical word. Then they say the release had the effect of transferring ownership, so therefore they equate a release to a sale. The problem is that theory is inconsistent with three different things. First of all, it's inconsistent with their own evidence in previous lawsuits involving the statute of repose. Second, it's inconsistent with the U. C. C. And its definition of sale. And third, it's inconsistent with Ford's own documents and deposition testimony. In this case, I'll start with the inconsistency with the previous lawsuits. Could I ask a question, please? Yes, it's your position that that there was a sale at another time. Or is it your position that that you don't know whether there's a there's a sale or not, and you don't have to show that they bear the burden of showing when it was and that it was indeed a that's right. Judge or they have the burden of establishing this statute of repose defense. Now I'll come to it in a moment. We do say there was a sale from the dealer to the ultimate consumer, Mr Batcher. But that doesn't count under the statute of repose because the dealer is not the defendant. The sale has to be from the defendant here. Ford Motor Company. So with respect to this release theory, I hope the fact that car manufacturers don't don't often sell, sell their vehicles to the dealers that they do these financing kind of arrangements that are not actual sales. Right. And in this and in this case, the dealer, Mr Trudeau from Leif Johnson, testified that he floor plans his vehicles, which, in his view, means that ownership doesn't transfer. He says only with respect to those dealers who pay cash. Do do I? Does the dealer on the vehicle? But in this case, said I floor plan and I don't own the vehicle. So that violates the instruction that the manufacturer is not supposed to sell to the plaintiff directly. If if if we take that argument, then who is the there's no intermediary then that owned the vehicle besides the manufacturer did? Well, it would appear that there's some kind of a consignment type arrangement. Uh, again, the facts are very murky. This particular industry, I think, is is very non transparent, and it's just difficult to tell what's going on between manufacturing the dealer. And that is precisely why we have a fact issue here. I think it's underscored in part by their own testimony in previous cases involving the statute of repose. I've given the court a handout. I hope you have it on page one. I've set forth excerpts from affidavits they used in previous cases based on Martinez, Eastman and Parks. And in there, and these are by their corporate representatives, they did not say there that the release amounts to a change in ownership, which in turn amounts to a sale. They didn't say that at all. They simply said a release is when the vehicle leaves for its possession, custody and control. Very common sense definition of release. But that's not a sale. And they go on to saying these affidavits that the sale was by the dealer. So they differentiate between a release in a sale. Second inconsistencies with the U. C. C. And I think this is very important. On page two of the handout, I've given you the key language out of the U. C. C. A sale consists in the passing of title from the seller to the buyer for a price. And then under Section 2401, um, it really depends upon the party's agreement. The court unfortunately left out the words of the U. C. C. That talk about unless otherwise explicitly agreed. And again, it depends on the party's agreement. Only if there's no agreement, this title passed based upon mere physical delivery. Here, Ford and the dealer did have an agreement. The problem is that both the court and now Ford have mischaracterized what that agreement was. And if I could ask the this here is really where the rubber meets the road. In my view, both the district court and Ford described the sales and service agreement between Ford and the dealers this way. They say title to each company product dot dot dot shell dot dot dot passed to the dealer dot dot dot upon delivery thereof to the carrier or to the dealer, whichever occurs first. The problem is the missing words, um, completely changed the agreement regarding what passes title. So also on page three, I put I put forward the full agreement, and it begins by talking about how how payment is in accordance must be in accordance with the vehicle terms of sale bulletin. And then when you look at the missing words, what it really says is title to each company product purchased by the dealer shall unless otherwise provided in the applicable vehicle terms of sale bulletin passed to the dealer or such financial institution or other party, uh, as may have been designated to the company by the dealer upon delivery, etcetera, etcetera. So passage of title is not based on delivery. It's based on the vehicle terms of sale bulletin per the agreement of the parties. The problem is that four did not put the vehicle terms of sale bulletin into the record. But as I mentioned earlier, I think we do have some sense of what what the evidence showed about an agreement, and he said that ownership passes only when dealers pay cash in full. Uh, he said, I don't pay cash in full. I floor plan the vehicles on. Therefore, I don't own the vehicles. So again, I think it best here. We've got some kind of a consignment type arrangement, but not a sale. And certainly they didn't bear their burden of showing conclusively, and it's a matter of law that there was a sale. And then finally, I just point out that their release theories inconsistent really with their own documents and with, uh, the testimony they they put forward in the summary judgment record. They talk a lot in agreement. Could they just say to the manufacturer? Come and get your vehicle. I'm not gonna sell it. I think that I think the manufacturer has some some sort of a security interest in the vehicle under the floor plan, but it may not be the manufacturer. Frankly, it may be the financing arm, which in this case is Ford Motor Company. You see Ford Motor Company all over this transaction, and yet it's not the defendant. We don't trigger repose based upon anything. Ford Motor Company did. And as I mentioned, they didn't even produce any documents when they were subpoenaed by Ford Motor to do so. Um, what does title not pass to the dealership when the vehicle was delivered to the dealership? Uh, no, Your Honor. And it's because of their own agreement here. It says title shall pass upon delivery unless otherwise provided in the applicable vehicle terms of sale bulletin. And while we don't have the vehicle terms of sale bulletin in the record, they didn't put it in there. We do have the testimony of Mr Trudeau, who made it very clear that that under the party's only when the dealers pay cash in full. And they talk a lot about their mini 999 report. I would point out that that document actually differentiates between a release on the one hand and a sale by the other. Those are two different things. And then, finally, I think this is very important. If you look at page six of the handout, this has the testimony that the court relied upon from the two corporate representatives, O'Brien and Pasquarella and then Trudeau, the dealer. And for every statement that the court relied upon, I have testimony that basically contradicted it. It's internally inconsistent. So O'Brien actually said in the court left this out. That transfer of ownership does not occur until payment in full is made. Likewise, Trudeau said, um, that that those who floor plan the vehicles do not own them, and I floor plan them. And then finally, Pasquarella said nothing has transferred ownership yet to the dealer until full payment is made. So that's what transfers ownership. Full payment, not not mere delivery to the dealer or mere delivery to the carrier pursued to the party's agreement. And again, it's the agreement that controls under the U. C. C. So I think for all these reasons we have, we have fact issues up and down the board about what exactly this very, um, obtuse transaction was. Levenger, you've got obviously rebuttal time and some more of this time, but you want to shift gears and turn to tolling? Sure. Certainly. Well, Your Honor, again, I don't think the court needs to get to it because I don't think the statute of repose even applies in the first place. But if you were to get to it, I think the district court erred here in saying that repose statutes of repose are not subject to that's true, but we're not relying upon any judicially crafted rules of tolling. We're relying upon the statutory tolling provision section 16.001. That provides the quote for the purposes of this sub chapter. Close quote. The time someone is a minor is not included in a limitations period. Now, this subject chapter, which is subject to 16 A of the civil practice remedies code, does, of section 16.012. Also, very importantly, 16.012 describes itself as a section that has a limitations period. So if you just look at the plain wording of the statute 16.01 and 16.012, the first applies to the second. Also, I would point out that 16.012 is different from 16.011, which is the repose statute for 16.012 does not. And finally, I think it's important to note the difference with the medical malpractice statute of repose 74 to 51, which expressly applies to quote all persons regardless of minority. In other words, the language is right there in the statute of repose that there's no tolling. We don't have any such language in 16.012. So I think the lakes lecture clearly intended that tolling would apply. The case of Eastman versus Ford out of Eastern District of Texas supports our position that 16.011 tolling does apply to 16.012. I'm aware that I know that there's a recent Dallas Court of Appeals opinion called Stevenson that found Eastman not to be persuasive. But I would point out that what Stevenson had to say really was dictum because in that case, the minor died and minority status ceases upon death and tolling ceases upon death. So the court could have and did get there by simply holding that the minor died and tolling ceased. But the point of death and Stevenson I'm sorry, Judge Willie. Go ahead. Go ahead, Judge. I'm sorry. Should we certify this? Um, good question, Judge. All right. I certainly not on the first part of the case that that doesn't apply at all. But on tolling, I think you very well could certify it. But, you know, I just think the plain language, as I've explained, uh, requires that 16.01 apply to 16.012. I think Stevenson can be viewed as as dictum because the death of the minor, um, and it's not binding anyway, right? It's just a it's just a helpful in just making our eerie guess. I think that's right. I think that's right. It's binding on us in that not binding. And for that matters, neither is neither is Eastman versus Fort Motor. Except the text is also very helpful, obviously, in the place we start and mostly most the time end. But we don't. It's a It's an open question in our circuit and in the Texas Supreme Court. Yes, Texas Supreme Court is not not ruled upon it. I'm sorry, George. Will it? I know I was just gonna make the point in Stevenson that you mentioned the plaintiff's death on the plaintiff's death was, I suppose, an alternate reason that double a one did not apply. Um, but the Stevenson court did engage in a pretty thorough analysis about how double a one and a one to interact. It did. It did. I think it got it wrong because it ignored the differences between 16 oh 12 and in the medical malpractice repose and so forth. I, you know, I still say victim may not exactly be the right word. It may be just an alternative holding. But nonetheless, the court could have started and stopped just with the death of the minor, which did not happen in our case. Okay. I think you've saved time for rebuttal, Mr. Levenger and, um, we're here. We're here here from Mr Manucci. Thank you, Justice. My name is Bill Manucci. I represent Apple Leaf Ford Motor Company. This is a summary judgment case, of course, and the first step in determining if a genuine issue of fact material fact exists is to define what are the material facts here. The material facts are a matter of specifically, what did the Texas Legislature mean by date of sale of the product of the defendant in the products liability statute of repose? And again, it's what did the Texas Legislature mean? Not what the parties meant. The district court direct correctly analyze this case is one of statutory construction, and they followed the district court followed the correct analytical path. The first thing the district court did was using bedrock principles of statutory construction determined that date of sale of the product by the defendant means exactly what the plain language says. The date that the defendant exchanges the product for a price. That's the plain language meaning of sale. Second thing the district court did properly, having identified that one material fact, the court recognized that the evidence on that one fact showed that on the vehicle in question for a price. That's when a sale of the product by the defendant occurred, and that's why summary judgment was proper here. And we asked the court to affirm the district court's order. Now, a quick word about statutory. It's incorrect to look at the fact is taking it on consignment. You know, if I go drop some clothes off at a consignment store, they don't take title that they can sell it unless I leave it there too long. They can take title. But so I'm asking, do you believe that when they say that it was really more like consignment arrangement because of the floor plan and that they were not taking the price and changing title? What? What is wrong with that? There is absolutely no consignment arrangement arrangement here. That is not how sales and motor vehicles work in the state of Texas. As Mr Levenger said, manufacturers cannot be the seller of a vehicle. No one's briefing insinuates throughout that there's some that the dealership, Leif Johnson Ford, is some sort of go between here that it is some sort of consignment arrangement. It's simply false. Page 64 of Fred Trudeau's deposition testimony. Question. Is there any way Leif Johnson Ford did not yet own this vehicle by December 23rd 2003 answer? No, absolutely not. Bruce Batcher, the owner of Leif Johnson Ford, did not own this vehicle by December 23rd 2003 question. From whom did you purchase the vehicle? Answer. Leif Johnson Ford. Every document that's in this record, every sales document that was able to be found after 15 long years had passed. Identify Bruce Batchard as the owner and Leif Johnson Ford as the seller or the previous owner. That's the Texas title history. The Leif Johnson Ford financial documents again. Ford can't sell vehicles to consumers in Texas. Leif Johnson Ford had to be the owner of the vehicle when it was sold to Mr Batcher. That's one of the ways Mr Trudeau's and Mr Pescarella's testimony. Pardon me? What do we do with Mr Trudeau's and Mr Pescarella's testimony, Mr? So the material fact here again to get back to that is the date that Ford exchanged the product for a price. So Mr Pascarella on page 41 of his deposition testimony, and that's located in the record. Um, starting at page 2 95 through 304, he he defined he defined exactly what release means. He said, quote, the definition of release in this document. That is a point in time when the dealer is supposed to something. That's when you buy something, whether it's on Amazon, even Amazon, you buy it and they ship it. They don't ship it usually before you buy it. What Mr Pascarella is saying there, and it's even more clear in Mr O'Brien's testimony, is that Ford exchanges this vehicle for a price on the release date. They get money from the dealership or the floor plan. They get money and they exchange the time they release it for that price. That is a sale under the plain meaning of this product's liability statute of repose. While we're on the subject, Mr O'Brien, who's also Ford's corporate representative, um, beginning on the record page 2 79 even more clear on this point question. So does Ford receive payment for the vehicle on the release date? Answer? Yes. Question. And does Ford give possession and control and ownership of the vehicle to the dealership? Answer. The dealer is the owner at that point. Question. When was the purchase price paid to Ford? Answer. It would be drafted on the day the vehicle gets handed to the carrier, which was October 6th. I mean, you can create fact issues probably all day by deposing non lawyers and throwing statutory definitions in front of them about first sale and and sale under the product's liability statute of repose. But again, the material fact is what the Texas Legislature intended, and that is a very simple, plain language definition of sale, which is you give me money. I give you the product. The exchange of the product for the price is Ford Motor Company. I mean, the financing company, the one who's actually giving the money there are on behalf of the dealership. Yes, but the dealership is the owner of the vehicle dealerships. Franchise dealers are the only entities that can sell vehicles to customers in the state of Texas. So whatever the arrangement is between the person who provides, you know, whether it's the lending company or the dealership that provides the money, the point is that Ford's being paid at the at the release date. That's when Ford gets its money. That's the definition of a release date. And, you know, the fact issues in here. Well, yes, true. Ford doesn't have a piece of paper from this transaction 15 years ago that, you know, shows a copy of a check where they got money for this vehicle. And that's part of the purpose of the statute of repose. You know, I'm quoting from the Methodist Healthcare versus Rankin case, which was authored by Justice Willett. He says one practical upside of curving open ended exposure is to prevent defendants from answering claims where evidence may prove elusive due to unavailable witnesses, faded memories, lost or destroyed records and institutions that no longer exist. You know, the whole purpose of the statute of repose is not to look for documents that may be gone. You ask me in this case, it's true that we do not know whether or when payment in full was made. Correct. We do know that's that is why Mr. Pescarella said that at 5 12 of the record. He does not know whether or when payment in full was made, and nothing has transferred ownership to the dealer until full pay payment is made out of context. It is. And what what he what he what we do know is that when Ford writes down the release date in its records, that means it's been paid for the vehicle. That's exactly what Mr. O'Brien testified to. You asked me Justice Elrod about what do we do with Fred Trudeau's testimony? Fred Trudeau says the second. Literally, it rolls off the assembly line. I own it. And when does Leaf Johnson Ford by the vehicle answer the second it rolls off the assembly line as soon as it leaves Ford? We own it. You know, after Ford submitted its summary judgment proof, the testimony of O'Brien, Pascarella, Trudeau, Mr. Batcher, all of the sales documentation showing Leaf Johnson Ford is the owner. The burden shifted at that point. The burden shifted to the plaintiffs to produce evidence that Leaf Johnson Ford did not pay Ford on the release date because the evidence up to through Ford submission is that it Mr. Levenger seven pages that he submitted to the court. Where is where is the one piece of evidence that Ford didn't get paid on the release date for that vehicle? And it defies common sense. Why would Ford be giving its vehicles away without getting paid? Of course it got paid when it released the vehicle. You know, where is where is the where is their evidence? They try to create a fact issue again. If you read the depositions carefully out of throwing statutory definitions that these non lawyer witnesses and trying to create discrepancies, but it doesn't matter what they think a sale is. What matters is what the Texas Legislature thinks a sale is, and it's plain language that's straight out of the Dow Free opinion. Fifth Circuit 2011. Mr Levenger is right. That opinion answers the very said Dow Free address the precise issue at hand, and it did. The Fifth Circuit in Dow Free undertook this exact statutory analysis of what is the data sale of the product by the defendant. The Fifth Circuit looked at Texas case law, looked at Black's Law Dictionary because, of course, the reason the reason that Fifth Circuit was looking at this material is because it said by its plain and common meaning, sale is a very broad term. This statute applies to millions of products. Sale has to be a broad term, not specialized for vehicles and something else for all the other products out there. So the Fifth Circuit looked it broad definitions of sale. Black's Law Dictionary case law, the UCC, which is a fairly ubiquitous commercial transaction statute, and the Fifth Circuit came up with the exact right analysis and the district court here followed it. The plain meaning of sale is the exchange of the product by the defendant for for a price. That is the one material factor. Do you want to address the tolling? Of course. I mean, unless someone else has a question on the sale. Tolling. So, of course, this is statute of repose, and every court that's ever looked at this and the appellants as well in their briefing recognizes this as a statute of repose. Statutes of repose cannot be told absent a tolling provision in the statute itself. That is bedrock law. It's in U. S. Supreme Court opinions. It's in Fifth Circuit opinions. Burlington Northern versus Pool. It's in Methodist Healthcare versus Rankin again. You know, Texas Supreme Court. In that case, Justice Willett's opinion said to declare that a statute of repose purpose is to declare a no exceptions cut off point and grant a substantive right to be free of liability. A no exceptions cut off point except for those set forth in the statute itself. So in this instance, we have a minor tolling provision section 16.01. It applies by its plain terms only to statutes of limitation. So you can see the inconsistency here. We know this is a statute of repose. Yet the minor tolling provision in 16.01 says it applies only to periods of limitation. That ends the analysis. And if you look at the Stevenson opinion, it's Justice Willett point Willett pointed out there's a there's a three page analysis of why Eastman was wrong and why you cannot apply minor tolling to the statute of repose. Four main reasons. The plain language argument that I just mentioned. It's completely inconsistent with the plain language of the statute. Number two, the Texas Legislature did not set forth minor tolling in the products liability statute of repose, and it has to by definition because they can't. There aren't exceptions unless they're in the statutes themselves. Number three, the whole purpose of a statute of repose, which again is discussed in all these opinions, is defeated by tolling it. And finally, the consequences of applying minor tolling to the products liability statute of repose stretch far beyond that statute because there are other statutes of repose in Chapter 16. There are statutes of repose for engineers, architects, interior designers, people who construct buildings, surveyors and court was Stevenson Court was very cognizant about an interpretation that would apply minor tolling to all of those statutes and open the floodgates. So if you look it, um, a footnote in Stevenson where they, you know, of course, the appellants in that case brought up Eastman and the Dallas Court of Appeals just flat out said we don't find the analysis persuasive and it's not persuasive because do you find the term limitations period to be broader, more encompassing than statute of limitation? No, I doubt a limit. Well, so in a statute of repose, you have a proposed period in a statute of limitations. I guess you have a limitations period. I mean, repose and limitations are fundamentally different, and that's been discussed in so many cases. They are. They're just they're different beasts. And so you cannot you have to assume, I think that the Texas Legislature knew the difference between them. And in Chapter 16 Chapter 16 is titled broadly limitations, even though it, of course, it includes both statutes of limitations and statute of repose. That's true. That's true. But again, the statutory construction, the specific controls over the general. So I think the specific language in section section 16.001 would control over just the title of the section. But you are correct on that. As you look at the language of 16 double one, the scope of it as you kind of parse that language is the key phrase in your view for purposes of this sub chapter. You have it there in front of you. I do. Let me grab it here. So you've got this phrase for purposes of this sub chapter, right? And then elsewhere, you've got the phrase limitations period. And I'm not sure in terms of placing interpretive weight what what the key phrase ought to be. Well, I think for purposes of this sub chapter is in Section A of the statute. I'm looking at it right now. And then the minor tolling provision is Section B. So I'm not I'm not sure if the two go together. Um, I think you just have to go with the most specific thing that the Legislature said, and that that is that this applies to a limitations period. And we know from every single case that's looked at the products liability statute that it is indeed a to repose. Are you as open minded to certification as Mr Levenger is? I don't think it's needed, frankly. I mean, we know that we look at the plain language first and foremost under Texas law and interpreting a statute, and this seems like a fairly plain language interpretation. The Stevenson court certainly thought so, and I don't think there's anything very confusing about it, particularly when you look at the other factors that Stevenson looked at. I mean, I would, um, if I could point out another opinion by the Fifth Circuit, I think it's helpful here. The Burlington Northern opinion in 2005 that that case involved, and that's cited in our brief. That case involved a circular tolling provision that by its plain terms applied only to statutes of limitations. So the tolling provision in circle applied to that the Fifth Circuit held that because of that plain language, it did not apply to toll the products liability statute of repose. It's a case involving environmental claim and a tank. So there you have the exact analysis that I just pointed out and that the Stevenson court relied on as well as precedent for what I think is the correct interpretation here. And I don't believe this is something that would need to go to the Texas Supreme Court. Do you have anything further? Uh, I just want to mention that Mr Levenger did not discuss, um, the importation of the Certificate of Title Act first sale, um, into the products liability statute of repose. I don't know if he intends to do that in rebuttal. But, um, if the court is interested in Ford's position on that, it is in our briefing as to why that is not warranted and not wise. I'm happy to go over the reasons during my remaining time. But that's up to you. All right. There are five reasons why it should not apply in case it gets addressed. First of all, Certificate of Title Act first sale importation violates basic statutory construction. It adds language that is not in the language that is in there by the defendant. There's no support for importation in the statute, case law or legislative history. The purposes of this products liability statute of repose do not align with coda purposes, and it defies common sense, which is another fundamental principle of statutory construction. Um, what plaintiffs or appellants are asking us to believe is that the Texas Legislature, without any indication, intended one broad meaning of date of sale of product by the defendant for millions of products out there, but a wholly different one for vehicles without any indication that that's true. So coda does not belong in the products liability statute of repose. I want to mention one thing just very quickly about the, um, affidavits by Ford witnesses in prior cases. I would point out that those cases, none of which had a coda argument in them. Um, the distinction between the sale by the Ford in the sale by the dealer did not matter. In those cases, the the claim was barred by repose under either date, so it wasn't a point of contention in the case. That's why it's not mentioned. If you read those affidavits, they're entirely consistent with what Ford says here. The date of lease is isn't the date when the vehicle leaves Ford's possession and the vehicle was sold by the dealership. The affidavits in the past cases were silent on payment. They're not contradictory. Thank you. Thank you, Mr. Love. Would you save time for rebuttal? Thank you, Your Honor. Council said a number of times that a sale is an exchange for a price. There's more to it than that. It's a price that has to be paid in full in cash. That's what that was the case in Dalfrey. That's part of the agreement of the parties here that that has to be paid in cash in full. Also, under the U. C. C, which does define sale since the legislature didn't define sale in the statute of repose, there has to be a passing of title in accordance with the party's agreement. And that's where we have all sorts of fact issues here. Council read to you, uh, excerpts of Haskell and Trudeau. But for everything he read, there's something internally inconsistent. Um, O'Brien admitted that the transfer of ownership doesn't occur until payment in full is made. Uh, he really didn't know whether payment in full is made. He related it to the release, but that's contested because elsewhere they've admitted that the release is nothing more than a change of possession, custody or control. It has nothing to do with on the part of the dealer or a promise to pay. Mr Pascarelli uses words as well on page 5 12. But a promise to pay or a commitment is not payment in full. Very different things. So again, there's a tremendous amount of obtuseness in the testimony. But doesn't the company, the finance company pay in full again? We don't know. You can't tell from looking at any documents and you can't tell from from any of the testimony whether the finance company paid or I guess more to the point whether it paid in full on October 6 2003. At some point, Ford Ford Motor may have gotten paid. It may have gotten paid when the when the dealers sold the vehicle to the ultimate consumer. But there's no evidence of that. Why is the way the dealership financed the purchase the be all end all? Why is that relevant? Why aren't all the elements of the sale established here? Well, because you need to start with the U. C. C. Which talks about unless explicitly agreed to by the parties, then you look at the agreement of the parties. The court purported to talk about what the agreement of the parties was, but it used ellipses throughout to excise the critical words that show that the agreement of the parties was more than just, um, uh, delivering the vehicle. The agreement of the parties was actually payment in full in cash, which is consistent with the testimony of Mr Trudeau, who said nothing. Trudeau's testimony in and of itself, um, that I've listed here on pages four and five creates fact issue, he says. He says dealers who floor plan their vehicles as as contrasted to dealers who pay cash in full they do on the vehicles. So there's your contested issue of fact it's again. There's a lot made of the fact I know there's a lot made of the fact that reps from Ford and from the dealership, they use the words sale and the word release sort of interchangeably. But but that sort of colloquial non lawyer lay person use of the word. Why does that have any bearing on whether a sale as a legal matter occurred? Well, well, I don't I don't think release does equate to a sale, and they didn't think it did either. At the time they filed their affidavits in the previous cases, they they viewed the release is what you and I think it is, which is simply letting it go, changing possession, custody or control. Now they're trying to say, Well, release really means we got paid in full, and therefore there was a sale. Well, that's not there. There's nothing that supports that. There's no documents that support that. And to the extent they say that they internally contradict themselves. So so I think they're the ones who are trying to equate a release to a sale, and nothing does that. In fact, you look at the many 999 report that they like to talk about. It has the word release and then separately uses the word sale. But the sale only applies to the dealers selling to the consumer. You have anything more to add in response to Mr Manucci's tolling argument? The only thing I would add on that, Your Honor, is that, uh, 60 section 16.012 does describe itself as as a section that has a limitations. Period. Limitations. Period. That's the word wording in Section 16.01. Stevenson overlooked that. I think applies to this sub chapter, which includes 16.012 and 16.012 describes itself as having a limitations. Period. Thank you. We have your argument. This case is submitted. We appreciate. We appreciate your appearing via zoom and representing helpful arguments in this case. Thank you.